FILED
2026 Aug-31 AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

KAITLIN DANIELLE VINCENT,

Plaintiff,

v.

FIFTH THIRD BANK, NATIONAL ASSOCIATION as successor by merger to COMERICA BANK; CONDUENT BUSINESS SERVICES, LLC; AND CONDUENT STATE & LOCAL SOLUTIONS, INC.,

Defendants.

**Case No.:**

**COMPLAINT FOR VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT**

**DEMAND FOR JURY TRIAL**

Plaintiff Kaitlin D. Vincent ("Plaintiff" or "Ms. Vincent") brings this action on an individual basis against Defendant Fifth Third Bank, National Association, as successor by merger to Comerica Bank, for violations committed by Comerica Bank ("Comerica"); Defendant Conduent State & Local Solutions, Inc. (“CSLS”); and Defendant Conduent Business Services, LLC (“CBS”). CSLS and CBS are referred to collectively as the “Conduent Defendants,” and all Defendants are referred to collectively as “Defendants.” Plaintiff alleges violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq., and its implementing Regulation E, 12 C.F.R. Part 1005, and states as follows:

## INTRODUCTION

1. The computerization of modern banking has made electronic fund transfers commonplace and has enabled consumers to access funds quickly through debit cards, automated teller machines, and point-of-sale terminals.

2. The same systems can expose consumers to severe financial harm when an unauthorized actor obtains account or card information and a financial institution wrongly imposes the resulting loss on the consumer.

3. Congress enacted the EFTA to establish the rights, liabilities, and responsibilities of participants in electronic fund transfer systems, with the primary objective of protecting individual consumer rights.

4. This action arises from thirteen unauthorized electronic fund transfers totaling $3,391.23, together with $6.00 in ATM fees imposed as a result of those transfers, which depleted a total of $3,397.23 from Ms. Vincent's Alabama Way2Go account on August 29 and August 30, 2025.

5. The disputed transactions occurred at Walmart locations and ATMs in Pelham, Hueytown, Hoover, and Vestavia Hills in the Birmingham area.

6. Ms. Vincent did not make, authorize, or benefit from any of them.

7. She retained possession of her card, and did not furnish her card, card number, PIN, account credentials, or any other means of access to the person or persons who initiated the disputed transfers; she did not act in concert with any such person; and she received no direct or indirect benefit from the transfers.

8. Plaintiff was working in the Harvest/Limestone County area on both relevant dates.

9. Ms. Vincent promptly reported the unauthorized activity.

10. On September 16, 2025, the Way2Go Fraud Services Department denied Plaintiff's claim through a form letter stating that "one or more" of several generic rationales supported the determination that the disputed transactions were not unauthorized. Upon information and belief, CSLS operated or administered the Way2Go fraud-investigation and error-resolution process that

generated the denial, acting on behalf of Comerica. Plaintiff further alleges, upon information and belief, that CBS participated in or provided operational support for the Way2Go program as alleged more specifically below.

11. The denial did not identify which stated rationale applied to any particular disputed transaction, what evidence supported the determination, or how the determination accounted for the information Plaintiff had supplied. The disputed funds and resulting fees were not restored to Plaintiff's account.

12. Ms. Vincent continued trying to obtain correction, supplied additional corroborating evidence including work records, a police report, and an FTC Identity Theft Report, and repeatedly mailed a detailed written dispute to the addresses designated for the Way2Go program.

13. No portion of the $3,397.23 disputed loss has been restored to Plaintiff.

14. Plaintiff seeks actual damages, statutory damages, treble damages where authorized, costs, reasonable attorney fees, and all other relief available under the EFTA and Regulation E.

## PARTIES

15. Plaintiff Kaitlin D. Vincent is a natural person who resides in Decatur, Morgan County, Alabama. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1693a(6) and 12 C.F.R. § 1005.2(e).

16. At all relevant times, Plaintiff maintained an Alabama Way2Go prepaid debit account used to receive and access child-support funds for personal, family, and household purposes.

17. Plaintiff's Way2Go account was a consumer asset account and a prepaid account within the meaning of 15 U.S.C. § 1693a(2) and 12 C.F.R. § 1005.2(b). Her Way2Go debit card was an access device within the meaning of 15 U.S.C. § 1693a(1) and 12 C.F.R. § 1005.2(a).

18. At all relevant times, Comerica Bank issued Plaintiff's Way2Go access device and provided electronic fund transfer services in connection with Plaintiff's Way2Go account. Comerica was a "financial institution" within the meaning of 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i).

19. Upon information and belief, Comerica contracted with and delegated to the Conduent Defendants functions relating to the Alabama Way2Go program, including card and account servicing, maintaining or providing account and transaction information, customer service, fraud-claim intake, investigation, and error resolution. CSLS directly operated or administered customer-facing Go Program and Way2Go functions, including fraud-investigation and error-resolution functions. Plaintiff further alleges, upon information and belief, that CBS participated with CSLS in providing business-process, operational, or other support for the Way2Go program. The precise allocation of responsibilities between CBS and CSLS is within Defendants' possession and control and cannot reasonably be determined by Plaintiff before discovery.

20. On February 1, 2026, Comerica Bank merged with and into Fifth Third Bank, National Association. Fifth Third Bank, National Association survived the bank merger, and the separate corporate existence of Comerica Bank ceased.

21. Defendant Fifth Third Bank, National Association is therefore the successor by merger to Comerica Bank and is responsible for Comerica Bank's liabilities arising from the conduct alleged in this Complaint. Defendant Fifth Third Bank, National Association's principal

address is 38 Fountain Square Plaza MD, 10AT75, Cincinnati, OH 45263 and can be served through its registered agent, Corporation Service Company Inc., located at 641 South Lawrence Street, Montgomery, AL 36104.

22. Defendant Conduent Business Services, LLC is a Delaware limited liability company and an affiliate of CSLS within the Conduent corporate organization. Upon information and belief, CBS participated with CSLS in operating, supporting, servicing, or administering one or more aspects of the Go Program and Plaintiff's Way2Go account, including through business-process or operational services. Plaintiff presently lacks access to the Conduent Defendants' internal records identifying the precise functions allocated to CBS as distinguished from CSLS. CBS's principal address is 100 Campus Drive, Suite 200, Florham Park, NJ 07932. CBS can be served through its registered agent, Corporation Service Company Inc.. located at 641 South Lawrence Street, Montgomery, AL 36104.

23. Defendant Conduent State & Local Solutions, Inc. is a New York corporation and an affiliate of CBS within the Conduent corporate organization. Upon information and belief, CSLS directly operated or administered the Go Program and Way2Go cardholder-facing services applicable to Plaintiff, including account and card administration, customer service, fraud-claim intake, fraud investigations, error resolution, and communications concerning the disposition of fraud claims. CSLS can be served through its registered agent, Corporation Service Company, located at 641 South Lawrence Street, Montgomery, AL 36104.

24. CBS and CSLS are affiliated entities that operate under common Conduent branding. Where Plaintiff presently cannot determine whether a particular Way2Go function was performed by CBS, CSLS, or both, Plaintiff pleads the involvement of the Conduent Defendants upon information and belief and, where appropriate, in the alternative. Plaintiff will amend or

conform these allegations if discovery establishes a different allocation of responsibility between the Conduent Defendants.

## JURISDICTION

25. This Court has subject-matter jurisdiction under 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331 because this action arises under the EFTA, 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R. Part 1005.

## PERSONAL JURISDICTION AND VENUE

26. Defendants are subject to personal jurisdiction in Alabama. Comerica purposefully issued and provided electronic fund transfer services for an Alabama Way2Go account to an Alabama resident, directed its account and card services into Alabama, received notice of Plaintiff's Alabama-based fraud dispute, and caused the resulting financial injury to Plaintiff in Alabama. CSLS purposefully administered Way2Go services directed to Alabama cardholders, including customer-service, account-servicing, and fraud-resolution functions, and received, processed, investigated, or communicated concerning Plaintiff's Alabama dispute. Upon information and belief, CBS participated with CSLS in providing or supporting those Alabama-directed Way2Go services. Each Defendant therefore purposefully directed conduct related to Plaintiff's claims toward Alabama.

27. Venue is proper in the Northern District of Alabama under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Plaintiff suffered the loss and resulting harm in Morgan County, Alabama.

## DIVISIONAL ASSIGNMENT

28. Assignment to the Northeastern Division is appropriate because Morgan County is within the Northeastern Division of the Northern District of Alabama. 28 U.S.C. § 81(a)(2).

## FACTUAL ALLEGATIONS

### Summary of the Electronic Fund Transfer Act ("EFTA")

29. Congress enacted the EFTA, 15 U.S.C. § 1693 et seq., to provide a framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems, with the primary objective of protecting individual consumer rights. 15 U.S.C. § 1693(b).

30. Consequently, "the purpose of the [EFTA] is to benefit consumers, even at the expense of financial institutions. . . . [T]he EFTA limits [consumer's] liability and places the burden on financial institutions to prove consumer liability." Michigan First Credit Union v. T-Mobile USA, Inc., 108 F.4th 421, 427 (6th Cir. 2024).

31. Regulation E, 12 C.F.R. Part 1005, implements the EFTA.

32. An "account" includes a consumer asset account held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes, and expressly includes a prepaid account. 15 U.S.C. § 1693a(2); 12 C.F.R. § 1005.2(b).

33. An "electronic fund transfer" includes a transfer of funds initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 15 U.S.C. § 1693a(7); 12 C.F.R. § 1005.2(g).

34. An "unauthorized electronic fund transfer" includes an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 15 U.S.C. § 1693a(12); 12 C.F.R. § 1005.2(m).

35. When a consumer gives timely notice of an alleged unauthorized electronic fund transfer, the financial institution must promptly investigate, determine whether an error occurred

within the time prescribed by law, report the result to the consumer, and correct any error. 15 U.S.C. § 1693f; 12 C.F.R. § 1005.11.

36. If the institution cannot complete its investigation within the ordinary ten-business-day period, Regulation E permits an extended investigation only if the institution satisfies the applicable conditions, including provisional credit where required. 12 C.F.R. § 1005.11(c).

37. In an action involving a consumer's liability for an allegedly unauthorized electronic fund transfer, the financial institution bears the burden of proving that the transfer was authorized or, if unauthorized, that the statutory conditions for imposing consumer liability were satisfied. 15 U.S.C. § 1693g(b).

38. A person who fails to comply with the EFTA is liable for actual damages, statutory damages in an individual action, and, in a successful action, costs and reasonable attorney fees. 15 U.S.C. § 1693m(a).

39. The EFTA further provides that when a financial institution knowingly and willfully concludes that an account was not in error when that conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation, the consumer is entitled to treble actual damages. 15 U.S.C. § 1693f(e)(2).

**Plaintiff's Way2Go Account and the Source of the Funds**

40. Plaintiff receives child-support payments from the father of her children through an Alabama Way2Go prepaid Mastercard debit account. The Way2Go account allows Plaintiff to make point-of-sale purchases and ATM withdrawals.

41. The August 2025 Way2Go monthly statement bears Comerica Bank's name and logo and identifies Plaintiff's prepaid card/account by a masked number ending in 1580. Upon information and belief, CSLS, acting as program administrator and service provider for Comerica,

maintained, generated, delivered, or made available Plaintiff's Way2Go account statements and transaction histories.

42. The funds in Plaintiff's Way2Go account are used for personal and household purposes, including groceries, clothing, housing expenses, and other necessities for Plaintiff and her minor children.

43. Plaintiff lives in the Decatur area. Her ordinary in-person shopping activity is concentrated in Decatur, Hartselle, and Huntsville. She does not ordinarily travel to Birmingham to shop and did not go to the Birmingham-area merchants involved in the disputed transactions.

44. On August 29, 2025, Plaintiff made one legitimate $1,000 transfer at Redstone Federal Credit Union in Hartselle to move funds for household expenses and bills. Plaintiff does not dispute that transaction.

**The Unauthorized Transfers and Resulting Fees**

45. On August 29 and August 30, 2025, thirteen unauthorized debit-card purchases, cashback transactions, and ATM cash withdrawals totaling $3,391.23 were posted to Plaintiff's Way2Go account at locations in Pelham, Hueytown, Hoover, and Vestavia Hills, Alabama. Four $1.50 ATM fees, totaling an additional $6.00, were assessed as a consequence of the unauthorized ATM withdrawals.

46. The unauthorized transactions posted on August 29, 2025 totaled $1,606.93 and consisted of the following transactions:

a. $118.68 cash purchase with cashback at Walmart #5262, 2181 Pelham Parkway, Pelham, Alabama;

b. $487.84 cash purchase at the Walmart/Supercenter location at 2181 Pelham Parkway, Pelham, Alabama;

c. $487.84 cash purchase at Walmart #5262, 2181 Pelham Parkway, Pelham, Alabama;

d. $2.57 cash purchase at the Walmart/Supercenter location at 2181 Pelham Parkway, Pelham, Alabama;

e. $1.50 ATM withdrawal fee at the Walgreens location at 3025 Allison-Bonnett Memorial Drive, Hueytown, Alabama;

f. $203.50 ATM cash withdrawal at that Walgreens location;

g. $1.50 ATM withdrawal fee at that Walgreens location; and

h. $303.50 ATM cash withdrawal at that Walgreens location.

47. The unauthorized transactions posted on August 30, 2025 totaled $1,790.30 and consisted of the following transactions:

a. $101.44 cash purchase with cashback at Walmart #4580, 1300 Montgomery Highway, Vestavia Hills, Alabama;

b. $102.59 cash purchase with cashback at Walmart #4580, 1300 Montgomery Highway, Vestavia Hills, Alabama;

c. $102.59 cash purchase with cashback at the Walmart/Supercenter location at 1300 Montgomery Highway, Vestavia Hills, Alabama;

d. $486.84 cash purchase at the Walmart/Supercenter location at 1300 Montgomery Highway, Vestavia Hills, Alabama;

e. $486.84 cash purchase at Walmart #4580, 1300 Montgomery Highway, Vestavia Hills, Alabama;

f. $1.50 ATM withdrawal fee at the CVS location at 2201 Tyler Road, Hoover, Alabama;

g. $203.50 ATM cash withdrawal at that CVS location;

h. $1.50 ATM withdrawal fee at that CVS location; and

i. $303.50 ATM cash withdrawal at that CVS location.

48. The thirteen disputed transactions and four resulting fees caused a total loss of $3,397.23.

49. Plaintiff did not make or authorize any of the thirteen disputed electronic fund transfers and received no direct or indirect benefit from them. The four $1.50 ATM fees were assessed against her account as a consequence of the disputed ATM withdrawals.

50. Plaintiff retained physical possession of her Way2Go card. She did not furnish the card, her PIN, her card or account credentials, or any other means of access to the person or persons who initiated the disputed transfers; she did not authorize anyone to initiate those transfers; she did not act in concert with any person who initiated them; and she received no benefit from them.

51. Plaintiff's work records establish that she worked from approximately 6:52 a.m. until 1:23 p.m. on Friday, August 29, 2025, and from approximately 7:10 a.m. until 5:20 p.m. on Saturday, August 30, 2025.

52. Plaintiff was working in the Harvest/Limestone County area on the relevant dates.

53. The disputed merchants were in the Birmingham metropolitan area, approximately one-and-one-half to two hours from Plaintiff's home, and outside her normal shopping area.

54. The disputed activity was concentrated into a short period and included repeated, back-to-back transactions at the same distant merchants and repeated ATM cash withdrawals.

55. Plaintiff did not know the identity of the person or persons who initiated the disputed transactions.

**Plaintiff's Prompt Discovery and Notice of Error**

56. On September 1, 2025, Plaintiff attempted to use her Way2Go card for a purchase and the transaction was declined. Plaintiff then reviewed her account activity and discovered the unauthorized transactions.

57. Plaintiff promptly contacted Way2Go customer service, reported that the transactions were unauthorized, and opened a fraud claim. Upon information and belief, the Way2Go customer-service and fraud-reporting channels used by Plaintiff were operated or administered by CSLS on behalf of Comerica, with CBS providing operational support to the extent established through discovery.

58. The resulting Way2Go denial identifies Plaintiff's claim as Service Request No. 1-8835506752.

59. Plaintiff completed the Way2Go Fraud Services Questionnaire of Fraud provided for the submission and investigation of unauthorized-transaction claims. Upon information and belief, CSLS administered this fraud-claim process on behalf of Comerica.

60. In that form she reported unauthorized purchases, stated that the card was normally kept on her person, stated that her PIN was not kept with the card, denied giving anyone permission or access to use the card or PIN, confirmed the card remained in her possession, and identified the disputed transactions.

61. Plaintiff's written fraud questionnaire further explained that she discovered the unauthorized activity when her card was declined, that the transactions occurred in areas where she did not travel, and that she had work records showing her whereabouts.

62. Plaintiff signed the completed questionnaire on September 13, 2025.

63. Plaintiff sent her completed written dispute materials to Way2Go Fraud Services by email and by Priority Mail Express. A United States Postal Service receipt dated September 15, 2025 reflects mailing to the Way2Go Fraud Services address in San Antonio, Texas.

64. Plaintiff's dispute was directed to and received through Way2Go Fraud Services. Upon information and belief, CSLS operated or administered the Way2Go fraud-services function that received and processed Plaintiff's dispute. Plaintiff further alleges, upon information and belief, that CBS participated in or supported that function to the extent reflected in Defendants' internal records.

65. The Conduent Defendants performed the Way2Go fraud-claim and error-resolution functions as Comerica's designated program administrators or service providers. Plaintiff's notice through those designated channels therefore provided Comerica with notice of her unauthorized-transfer dispute.

66. After Plaintiff reported the unauthorized activity, the compromised card ending in 1580 was deactivated and a replacement card ending in 7165 was issued to her. Upon information and belief, CSLS administered or caused the replacement-card process to be performed on Comerica's behalf.

67. Plaintiff repeatedly attempted to communicate with the Way2Go customer-service and fraud departments concerning her claim. Her telephone records document at least fifteen outgoing calls between September 2 and September 25, 2025, several lasting approximately thirty to fifty minutes. Upon information and belief, those customer-service and fraud channels were operated or administered by CSLS, with such participation or support from CBS as discovery may establish. Plaintiff repeatedly attempted to communicate with the Way2Go customer-service and fraud departments concerning her claim. Her telephone records document at least fifteen outgoing

calls between September 2 and September 25, 2025, several lasting approximately thirty to fifty minutes. Upon information and belief, those customer-service and fraud channels were operated or administered by CSLS, with such participation or support from CBS as discovery may establish.

68. Plaintiff's oral and written notices identified her Way2Go account, stated that the disputed transactions were unauthorized, and identified the dates and amounts of the disputed transfers.

69. Plaintiff provided notice within days after discovering the unauthorized activity and, in any event, within sixty days after the periodic statement or account transaction history reflecting the disputed transfers was transmitted or made available to her. Her notice was timely under 15 U.S.C. § 1693f(a) and 12 C.F.R. § 1005.11(b).

**Defendants' Denial and Deficient Investigation**

70. On September 16, 2025, Way2Go Payment Processing Service's Fraud Services Department issued a denial concerning Service Request No. 1-8835506752.

71. Upon information and belief, CSLS operated or administered the Way2Go Fraud Services Department, employed, controlled, or supervised personnel who performed fraud investigations for the Way2Go program, and generated, issued, or caused the issuance of form communications concerning the results of those investigations, including Plaintiff's September 16, 2025 denial. Plaintiff further alleges, upon information and belief, that CBS participated in or supported the Way2Go fraud-resolution operation to the extent reflected in Defendants' internal records. The precise allocation of those functions between CSLS and CBS is uniquely within Defendants' knowledge.

72. The denial asserted that, after a purported "thorough investigation," the disputed transactions "were not unauthorized" and therefore "no error occurred."

73. Instead of identifying the actual factual basis for that conclusion, the denial stated only that the investigation findings included "one or more" of several generic possibilities: that account access appeared to be from an authorized user or cardholder; that a merchant was pre-authorized; that transactions were authenticated using information known only to the cardholder with no sign of compromise; or that prior transactions with the same or similar merchants, and in some instances merchant communications, confirmed authorization.

74. The September 16 denial did not identify which of those alternative rationales actually applied to Plaintiff's claim, which disputed transactions were associated with any particular rationale, what evidence supported the determination, or how the fraud investigation reconciled its conclusion with Plaintiff's report that she retained possession of her card and had not authorized the disputed transactions.

75. At the time of the investigation, Comerica and the Conduent entities performing the delegated fraud-investigation and error-resolution functions had access to information calling for meaningful investigation, including thirteen disputed electronic fund transfers totaling $3,391.23 concentrated over two days; repeated purchases and cash withdrawals at distant locations; Plaintiff's continued possession of the card; her representation that she had given no one authority or PIN access; her work records; and her historical geographic spending patterns.

76. A reasonable investigation should have included consideration of relevant information within Comerica's records and within the records of its Conduent program administrators and service providers, including transaction timestamps, terminal and merchant information, authentication methods, authorization and PIN data if applicable, Plaintiff's historical transactions and geographic activity, fraud or account-security signals, and the timing and velocity of the disputed activity.

77. As a result of the denial administered through the Way2Go fraud-resolution process and Comerica's failure to recredit Plaintiff's account, Plaintiff was left to bear the entire $3,397.23 loss without Comerica establishing that she authorized the disputed electronic fund transfers or that the statutory conditions for imposing consumer liability were satisfied.

78. Based on the evidence available during the investigation, the conclusion that the thirteen disputed transfers were authorized lacked a reasonable factual basis. Upon information and belief, that determination was generated through the CSLS-administered fraud-investigation process, with such participation by CBS as discovery may establish, and was adopted or relied upon by Comerica when it declined to recredit Plaintiff's account.

**Police Report, FTC Report, and Renewed Written Dispute**

79. Plaintiff continued trying to prove the unauthorized nature of the transactions after the September 16 denial.

80. Plaintiff reported the unauthorized card and ATM transactions and theft of her funds to the Priceville Police Department. The Police Department opened Case No. P2025-0484 and documented the reported theft of funds from Plaintiff's Alabama Child Support account/card.

81. On January 13, 2026, Plaintiff completed an FTC Identity Theft Report, Report No. 196141555. Under penalty of perjury, Plaintiff reported that unauthorized transactions totaling $3,397.23 occurred on her Way2Go card on August 29 and August 30, 2025 in the Birmingham area while she was at work in the Harvest/Limestone area, that the card remained in her possession, and that she did not authorize the transactions.

82. On January 19, 2026, Plaintiff prepared a detailed renewed written dispute directed to Way2Go Card Payment Solutions at both the Austin, Texas and San Antonio, Texas addresses used for dispute resolution.

83. The renewed dispute again identified all thirteen transactions and $6.00 in related fees assessed by date, amount, merchant, location, and transaction type; explained that Plaintiff had possession of the card; explained that no one else had access to the card or PIN; identified her work location and work records; requested a full good-faith investigation and reimbursement; and expressly demanded return of the full $3,391.23 in an unauthorized electronic fund transfers and the additional $6.00 in resulting ATM fees, for a total of $3,397.23.

84. The renewed dispute enclosed Plaintiff's police report, FTC Identity Theft Report, work time sheets, the September 16 denial, and her prior dispute materials.

85. Plaintiff sent the dispute package by certified mail to both designated Way2Go addresses on January 30, 2026, and again sent certified mail to both addresses on March 6, 2026. Upon information and belief, the renewed dispute packages were received or processed through Way2Go systems administered by CSLS and maintained for Comerica and, after the merger, Fifth Third.

86. Despite Plaintiff's repeated notices, supporting documentation, and additional opportunity to correct the error before suit, the disputed funds and resulting fees have never been restored to Plaintiff.

**Plaintiff's Damages**

87. As a direct and proximate result of the conduct alleged above, Plaintiff remains deprived of $3,391.23 removed through the thirteen unauthorized electronic fund transfers and $6.00 in fees assessed as a result of the unauthorized ATM withdrawals, for a total unreimbursed loss of $3,397.23.

88. The missing funds were money Plaintiff used to provide for her household and children, including food, clothing, housing, and other necessities.

89. The loss caused financial hardship and caused Plaintiff difficulty meeting ordinary household expenses.

90. Plaintiff has spent substantial time and effort making repeated telephone calls, completing fraud forms, preparing and mailing disputes, communicating with law enforcement, obtaining an FTC Identity Theft Report, and attempting to secure the return of her funds.

91. As a result of Defendants' conduct, Plaintiff suffered actual damages including loss of access to and use of her funds, out-of-pocket expenses associated with disputing the transactions, inconvenience, frustration, worry, and emotional distress.

92. At all relevant times, Comerica designated the Conduent Defendants to perform functions relating to the Way2Go program on its behalf. Upon information and belief, CSLS directly performed or administered card and account servicing, customer service, fraud-claim intake, investigation, error resolution, and communications concerning fraud claims. Plaintiff further alleges, upon information and belief, that CBS participated in or provided operational or business-process support for one or more of those functions.

93. The acts of CSLS, and any acts of CBS established through discovery, in receiving, investigating, processing, and resolving Plaintiff's notices of error were performed within the functions delegated to the Conduent Defendants in connection with Plaintiff's Comerica-issued Way2Go account. Comerica remained responsible for compliance with the duties imposed upon it as the financial institution notwithstanding its use of program administrators, agents, or service providers.

94. Plaintiff presently lacks access to the agreements, corporate records, operational manuals, systems information, and other evidence establishing the precise division of responsibility among Comerica, CSLS, and CBS for maintaining Plaintiff's Way2Go account,

issuing or reissuing access devices, maintaining transaction histories, receiving disputes, investigating unauthorized transactions, and determining or communicating the results of those investigations. Plaintiff therefore pleads the Conduent Defendants' respective participation upon information and belief and, where appropriate, in the alternative.

## CAUSE OF ACTION

## COUNT I

## VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E 15 U.S.C. § 1693 et seq. and 12 C.F.R. Part 1005

95. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

96. Plaintiff's Way2Go prepaid account was a consumer account governed by the EFTA and Regulation E. Comerica issued Plaintiff's Way2Go access device and provided electronic fund transfer services in connection with the account and was a "financial institution" within the meaning of 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i). Fifth Third is liable for Comerica's obligations arising from the conduct alleged herein as Comerica's successor by merger.

97. Plaintiff further alleges, upon information and belief and in the alternative, that CSLS directly or indirectly held or administered Plaintiff's Way2Go account and/or issued or caused access devices to be issued or reissued and agreed to provide electronic fund transfer services in connection with the account. To the extent those facts are established, CSLS independently qualifies as a "financial institution" under 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i).

98. Plaintiff further alleges, upon information and belief and in the alternative, that CBS participated with CSLS in one or more functions constituting the direct or indirect holding of

Plaintiff's account and/or issuance of an access device coupled with the provision of electronic fund transfer services. To the extent those facts are established, CBS likewise qualifies as a "financial institution" under 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i). The information necessary to determine which Conduent entity performed each such function is presently within Defendants' exclusive possession and control.

99. Alternatively, to the extent either Conduent Defendant does not independently satisfy the statutory definition of a financial institution, its conduct in performing delegated Way2Go fraud-investigation, account-servicing, and error-resolution functions is alleged as conduct undertaken on behalf of Comerica and is relevant to Comerica's compliance with its obligations under the EFTA and Regulation E.

100. The thirteen disputed debit-card purchases, cashback transactions, and ATM withdrawals totaling $3,391.23 were electronic fund transfers. They were unauthorized because they were initiated by one or more persons other than Plaintiff, without actual authority; Plaintiff did not furnish those persons the card, PIN, credentials, or other means of access, did not act in concert with them, and received no benefit from the transfers. The four resulting $1.50 fees were losses caused by those errors. 15 U.S.C. § 1693a(7), (12); 12 C.F.R. §§ 1005.2(g), (m), 1005.3(b).

101. Plaintiff gave timely oral and written notice of the unauthorized electronic fund transfers through the channels designated for Way2Go fraud claims, triggering Comerica's duties under 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11 and, to the extent a Conduent Defendant independently qualified as a financial institution, that Defendant's corresponding statutory duties.

102. Comerica bore the burden of proving that the disputed electronic fund transfers were authorized or, if unauthorized, that the statutory conditions for imposing consumer liability were satisfied. 15 U.S.C. § 1693g(b). To the extent CSLS or CBS independently qualified as a

financial institution with respect to Plaintiff's Way2Go account, that Defendant likewise bore the statutory burden applicable to a financial institution.

103. Defendants violated the EFTA and Regulation E as follows:

a. Comerica imposed or permitted the entire $3,397.23 loss to remain on Plaintiff without establishing that Plaintiff authorized the thirteen disputed electronic fund transfers or that the statutory conditions for imposing consumer liability were satisfied;

b. Comerica, acting through the Way2Go fraud-investigation and error-resolution functions it delegated to its Conduent program administrators and service providers, failed to conduct an adequate investigation and failed properly to determine whether an error occurred;

c. Comerica failed to correct the errors, recredit the $3,391.23 in unauthorized electronic fund transfers, and refund the $6.00 in fees resulting from the unauthorized ATM withdrawals;

d. CSLS, acting in the fraud-investigation and error-resolution role alleged above, generated, communicated, or caused a no-error determination without reasonably reconciling Plaintiff's evidence with the relevant account, transaction, authentication, and security information available through the Way2Go program;

e. Upon information and belief, CBS participated in or supported the investigation or error-resolution process to the extent shown by Defendants' internal records; and

f. To the extent CSLS or CBS independently qualified as a financial institution, each directly failed to comply with the EFTA and Regulation E through the acts and omissions alleged above.

104. The conduct alleged above violated 15 U.S.C. §§ 1693f and 1693g and 12 C.F.R. §§ 1005.6 and 1005.11. The conduct of the Conduent Defendants in performing functions delegated by Comerica is attributable to Comerica for purposes of Comerica's compliance with its statutory obligations; additionally, each Conduent Defendant is directly liable to the extent it independently qualified as a financial institution subject to those provisions.

105. To the extent Defendants failed to make a good-faith investigation or lacking a reasonable basis for believing the account was not in error, Plaintiff is entitled to treble actual damages under 15 U.S.C. § 1693f(e)(1).

106. The no-error determination was made despite evidence available during the investigation that Plaintiff retained her card, had not provided another person access to the card or PIN, did not ordinarily transact in the Birmingham area, was working far from the disputed merchants during the relevant period, and disputed a concentrated series of geographically anomalous transactions. Plaintiff alleges that the financial institution or institutions responsible for the determination knowingly and willfully concluded that Plaintiff's account was not in error when that conclusion could not reasonably have been drawn from the evidence available at the time of the investigation. Plaintiff is therefore entitled to treble actual damages under 15 U.S.C. § 1693f(e)(2). Upon information and belief, CSLS performed the investigation and generated or communicated the no-error determination on Comerica's behalf; Comerica adopted and acted upon that determination by refusing to recredit Plaintiff's account. To the extent CSLS or CBS independently qualified as a financial institution, Plaintiff alleges § 1693f(e)(2) against that Defendant directly as well.

107. As a direct and proximate result of the violations alleged above, Plaintiff is entitled to recover actual damages, statutory damages, costs, and reasonable attorney fees under 15 U.S.C.

§ 1693m(a), together with treble actual damages under 15 U.S.C. § 1693f(e)(2) and the other relief requested below. Fifth Third is liable for Comerica's obligations as Comerica's successor by merger.

**TRIAL BY JURY**

108. Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kaitlin D. Vincent respectfully requests that judgment be entered in her favor and against Defendants and that the Court award:

I. Actual damages, including the unreimbursed $3,391.23 in unauthorized electronic fund transfers, $6.00 in resulting ATM fees, and all other actual and consequential damages proven, under 15 U.S.C. § 1693m(a)(1);

II. Statutory damages of not less than $100 and not greater than $1,000 under 15 U.S.C. § 1693m(a)(2)(A);

III. Treble actual damages under 15 U.S.C. § 1693f(e), as applicable;

IV. The costs of this action and reasonable attorney fees under 15 U.S.C. § 1693m(a)(3);

V. Prejudgment interest as permitted by law and post-judgment interest pursuant to 28 U.S.C. § 1961; and

VI. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 28th day of August 2026

*/s/ Jenna Dakroub*
Jenna Dakroub, AL #1859B86J
**CONSUMER JUSTICE LAW FIRM PLC**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (480) 613-7733
E: jdakroub@consumerjustice.com

Sylvia Bolos
Michigan Bar No. P78715
*Application for Admission Pro Hac Vice to be filed*
**CONSUMER JUSTICE LAW FIRM PLC**
835 Mason St., Suite C349
Dearborn, MI 48124
T: (248) 406-6025
F: (480) 613-7733
E: sbolos@consumerjustice.com

*Attorneys for Plaintiff,*
*Kaitlin Danielle Vincent*